## J. S. HOLLAND v. N. J. CASON, ETC.

**Contracts — New Trial — Evidence.**

   A new trial will be granted where from a preponderance of the evidence it is shown that the verdict was palpably erroneous in matters *ex contractu*.

**Same.**

   A. contracts to sell B. seven hogsheads of tobacco, six of which were to be good leaf tobacco and one to contain lugs. In a suit for breach of the contract plaintiff proves that there was three hogsheads of lugs, which was denied by defendant, but the witnesses of defendant did not purport to show that the particular tobacco they saw in defendant's barn was put into hogsheads and delivered to plaintiffs, nor did they see it delivered at the depot for shipment. *Held*, that such testimony could not sustain a general denial of breach of contract as shown by answer of defendant.

APPEAL FROM CHRISTIAN CIRCUIT COURT.

June 12, 1867.

OPINION OF THE COURT BY JUDGE PETERS:

This action was brought by appellant against appellees in the court below for an alleged breach of a parol contract made between the parties, whereby appellees sold to appellant their crop of tobacco grown in 1864, to consist of seven hogsheads, six of which were to be good merchantable leaf tobacco, the other to be of lug tobacco, all of which were to be delivered in good order at Hadensville, a station on the Louisville & Nashville railroad, and for which appellant was to pay them $20 per hundred pounds.

It is alleged in the petition that seven hogsheads of tobacco were delivered by appellees at the place designated in the contract on the 1st of December, 1864, and the appellant relying on their representations paid them therefor the contract price; and the injuries complained of are that of the hogsheads of tobacco thus delivered, two were entirely filled with lugs, and 600 pounds of lugs were in a third, and that one of the hogsheads containing lug tobacco, and weighing 2,120 pounds was prized, and delivered in bad order. That good, merchantable leaf tobacco at the date of the delivery of said tobacco was worth at Hadensville $35 per

hundred, and lugs were worth only $10 per hundred, and that the tobacco in the hogshead weighing 2,120 pounds, as aforesaid, on account of its bad condition, was worth only $7· per hundred. These allegations were denied by appellees and the issues were submitted to a jury, who found a verdict for appellees, and a judgment having been rendered in conformity thereto, appellant now seeks a reversal of that judgment.

The instructions under which the verdict was found were not objected to, and it is said by counsel for appellant they are unobjectionable, so that the only question presented for judicial determination is, whether the finding of the jury is so palpably and clearly against the weight of the evidence as to authorize this court to interpose and award a new trial after it has been refused by the court below.

The contract for the sale of the tobacco is proved substantially as set out in the petition by McKea, who proves he purchased it for appellant, and that after the contract had been made he agreed that in addition to one hogshead of lugs some 300 pounds of the same quality of tobacco might be put in the end or top of another hogshead which would be received. That he was present at a settlement between appellant and appellees for the seven hogsheads of tobacco, when appellee, N. G. Cason, produced the receipt of McKenzie, freight agent of the Louisville & Nashville railroad, for the tobacco, being seven hogsheads, and appellant paid for the number of hogsheads specified in the receipt of the freight agent. The tobacco was shipped to and received by Phelps, Caldwell & Co., in Louisville, for sale on commission, and its identity established beyond a reasonable doubt by the evidence. And Phelps, one of the firm of Phelps, Caldwell & Co., proves that he examined the two hogsheads, Nos. 1526 and 1527, both of which were lugs, and also the one numbered 1528 was of lugs, or very low leaf tobacco, when first offered for sale in March, 1865; he considered the tobacco had been put up in rather high order, as it had kept badly; the business of this witness was sampling and selling tobacco, in which he had been engaged for several years.

Mathews was examined as a witness by appellants, and proved that he was a dealer in tobacco in Louisville, and had been engaged in the business four years. He examined the hogsheads numbered 1526, 1527 in March, 1865, and said they were both very poor lugs; he also examined No. 1528 by sample; two-thirds of that he considered good tobacco; the residue he pronounced low

grade; he examined the tobacco closely, and the lugs were put up in bad order.

McKenzie was examined to prove the delivery, weighing, and shipping of the tobacco from Hadensville to Louisville, the particular marks or brands on the hogsheads, and the prices of tobacco of different grades, that called lugs being of an inferior quality and less value.

Appellees proved by one McRae that he was present at their barn about two hours on one occasion when they were prizing the first hogshead of tobacco; that he was a young man and had not had a great deal of experience in raising and handling tobacco, but knew good tobacco from lugs; while at their barn he examined appellant's crop; some of it was stripped and bulked down, and some was still hanging up in the barn unstripped; he did not go up and examine that hanging, except the lower tier; the tobacco which he saw put in the hogshead was in good order; he thought from the examination he made that there were 1,500, or 1,600 pounds of lugs in the crop, but could not say there was not more than that.

The next witness, Boales, proves he had but little experience in handling tobacco; he saw appellant's crop in the barn, examined it very slightly, saw none of it put in hogsheads to be prized; a part of it, when he saw it, was hanging in the barn, and a part was in the bulk; he neither got up in the barn to examine that hanging up, nor did he examine the courses or layers of that which was bulked, but from the examination he made he supposed of the whole crop there would be one hogshead of lugs.

The next and last witness was Thomas Yeates who was at least twenty years old, but how much over that he would not tell; some " five or ten years " before he testified he had worked a few days in tobacco; he was present in March, 1867, perhaps it should be " 1865," and saw the samples of tobacco referred to by the witnesses Phelps and Mathews, and he " thought " there was but one hogshead of lug tobacco.

The substance of the testimony of the two witnesses, McRae and Boales, is that they formed an opinion from the very hurried and imperfect examination they made of the tobacco they saw at appellant's barn before it was prized or even bulked; that there would not be more than one hogshead of lugs in the crop; but whether the tobacco they there saw was the same that was delivered to

39

appellant they did not know; they never saw it in the hogsheads and, of course, of the quality or condition of the tobacco delivered to appellant they could not speak for the obvious reasons herein suggested. Their testimony then cannot, by any consistent or rational rule of construction, be regarded as in conflict with the testimony of Phelps and Mathews, who prove that they saw the tobacco delivered to appellants after it was in the hogsheads, and that two of said hogsheads were filled with lugs, and there were about 600 pounds of lugs in a third hogshead. The testimony of the two witnesses first named may all be true, and still of the seven hogsheads of tobacco delivered by appellees to appellant two of them may have been lugs, and the third one may have contained 600 pounds of the same character of tobacco.

Yeates, the only other witness, who was examined by appellees, says he was present on the occasion spoken of by Phelps and Mathews, and saw the tobacco, and he thought there was but one hogshead of lugs, but he does not state that his experience either in working or dealing in tobacco was sufficient to enable him to distinguish that which is called lugs from that which is called good leaf tobacco, and taking his own account of his experience on the subject it leaves the question in great doubt. But even if it be admitted that there is some conflict in the evidence, still, as was said by this court, in Kirtly v. Kirtly, 1 J. J. Marsh. 96, in a case *ex contractu* when the evidence preponderates so decisively against the verdict as it does in this case, a new trial would be proper.

The petition, on its face, shows that appellees by their contract had a right to deliver one hogshead of lugs, and 600 pounds in another, so that unless there was more than that quantity appellant would have no right to recover on that ground.

For the reasons stated in this opinion the judgment is reversed, and the cause is remanded with directions to award a new trial, and for further proceedings consistent herewith.

*McPherson & Champlin,* for Appellant.

*Phelps,* for Appellees.